Ella Lillie, Appellee, v. John McFarlin, Executor of the Last Will and Testament of Luke McFarlin, Deceased, Appellant.

Gen. No. 9,419.

Heard in this court at the February term, 1939. Opinion filed January 25, 1940. Rehearing denied March 19, 1940.

ARTHUR G. WAITE, for appellant.

DAVID R. JOSLYN, of Woodstock, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On October 31, 1919 Luke McFarlin and Ida McFarlin, husband and wife, were the owners of 80 acres of land in Walworth county, Wisconsin and on that day they executed, in the State of Wisconsin, their note for $14,000 due March 1, 1930 and secured its payment by a mortgage upon said land and delivered the same

to Ella Lillie, the claimant herein. On February 26, 1921, the McFarlins conveyed the mortgaged premises to Albert Wiedenhoeft and Mary Wiedenhoeft, subject to said mortgage, but the grantees in said conveyance did not assume or agree to pay the indebtedness secured by said mortgage. The holder of the note and mortgage, Ella Lillie, knew of the conveyance and thereafter accepted from the grantees payments on both the principal and interest. After this conveyance the grantors therein, Mr. and Mrs. McFarlin, made no payments to Ella Lillie, the owner and holder of said mortgage. On March 1, 1930, being the date of the maturity of said $14,000 note, the balance due on the principal sum amounted to $13,600 and at that time there was $680 interest due. On May 22, 1930, without the knowledge or consent of the McFarlins, Ella Lillie and the said Albert Wiedenhoeft and Mary Wiedenhoeft executed the following instrument:

1. "AGREEMENT made and entered into this 22nd day of May, 1930, by and between Ella Lillie of the City of Beloit, State of Wisconsin, party of the first part, and Albert Wiedenhoeft and Mary Wiedenhoeft, husband and wife, of the Town of Sharon, Walworth County, Wisconsin, parties of the second part, WITNESSETH:

2. "That the said party of the first part is the legal owner and holder of a certain promissory note made by Luke McFarlin and Ida McFarlin, dated the 31st day of October, 1919, for the sum of Fourteen Thousand Dollars ($14,000.00) payable ten (10) years after March 1st, 1920, to the order of said Ella Lillie, which note was secured by a mortgage made and executed by Luke McFarlin and Ida McFarlin, his wife, to Ella Lillie, dated the 31st day of October, 1919, and recorded in the office of the Register of Deeds in and for Walworth County, Wisconsin, on the 28th day of November, 1919, in Volume 124 of Mortgages on page 99, and which mortgage covered the following described

real estate, situated in the County of Walworth and State of Wisconsin, to-wit:'' (Here follows a description of the eighty acres of land.)

5. ''And whereas, there is now due upon said note and mortgage the sum of Thirteen Thousand Six Hundred ($13,600.00) Dollars, of Principal and Six Hundred Eighty ($680.00) Dollars of interest;

6. ''And whereas, said parties of the second part do hereby desire to have the payment of the sum of Thirteen Thousand Six Hundred ($13,600.00) Dollars, principal of said note, extended for five (5) years from the 1st day of March, 1930, in consideration of and in accordance with the agreement hereinafter made on their part;

7. ''And whereas, the parties of the second part have this day paid Three Hundred Dollars ($300.00) of said interest money, leaving due thereon, as of March 1st, 1930, the sum of Three Hundred Eighty ($380.00) Dollars of interest;

8. ''Now, THEREFORE, the said party of the first part agrees that in case the said parties of the second part shall pay the said sum of Three Hundred Eighty ($380.00) Dollars of interest which became due on March 1st, 1930, on or before the 1st day of August, 1930, to extend the payment of Thirteen Thousand Six Hundred ($13,600.00) Dollars, principal of said note, for five (5) years from March 1st, 1930, said principal to bear interest at the rate of five (5) per cent per annum, to be payable annually, at the place mentioned in said note; second parties shall keep and perform all and singular the covenants and agreements in said note and mortgage, except as changed by this agreement;

9. ''And the said parties of the second part agree to and accept said extension upon the conditions aforesaid made and agree that in case of default of the interest payment of Three Hundred Eighty ($380.00) Dollars due on or before August 1st, 1930, and in case

of the default of any interest payment, or in case of failure to keep and perform any of the covenants and agreements in said note and mortgage contained, this agreement shall become null and void at the option of said party of the first part, and the balance of Thirteen Thousand Six Hundred ($13,600.00) Dollars on said note shall become immediately due and payable and may be collected, together with accrued interest at the rate of Five (5) per cent per annum, anything hereinbefore contained to the contrary notwithstanding.

10. "IT IS FURTHER AGREED, that this agreement shall be binding upon and insure to the heirs, executors, administrators and assigns of both parties hereto.

"WITNESS, the hands and seals of the parties hereto, the day and year first above written.

```
"In Presence of:            Ella Lillie      (Seal)
  Lett Shaw           Albert Wiedenhoeft  (Seal)
  Josephine A. Booth    Mary Wiedenhoeft  (Seal)."
```

At this time the fair, cash market value of the premises was $90 per acre and pursuant to said agreement Mr. and Mrs. Wiedenhoeft paid to appellee $300 to apply on the accrued interest of $680 but did not pay the further sum of $380 on or before August 1, 1930. On or about August 13, 1930, Albert Wiedenhoeft came to the office of the agent of appellee and offered to pay $100 of the interest that by the terms of said extension agreement became due on August 1, 1930 but the agent of appellee told Wiedenhoeft that he could not accept the $100 under the extension agreement as that agreement had expired but that he would accept said amount as interest and indorse the payment thereof on the note, whereupon Wiedenhoeft paid the $100 to the agent of appellee. On October 28, 1930, Luke McFarlin died and thereafter this claim was filed by Ella Lillie against his estate. In the county court the claim was allowed and upon appeal to the circuit

court the cause was submitted to the court upon a stipulation of facts and the oral testimony of witnesses and resulted in a judgment in favor of the claimant in the sum of $6,400 and from that judgment the executor appeals.

It is the contention of appellant that by the provisions of the agreement of May 22, 1930 the time of payment of the debt secured by said mortgage was extended without the knowledge or consent of the mortgagors, that the grantees of said mortgagors assumed the payment of the mortgage debt and thereby the mortgagors were released from liability. Counsel for appellee insist that by the provisions of said agreement the Wiedenhoefts did not agree to pay the indebtedness secured by the mortgage and that by the terms of the agreement of May 22, 1930 appellee simply obligated herself in the event the Wiedenhoefts paid the sum of $380, being the balance of the interest due March 1, 1930 on or before August 1, 1930, that then and in that event she would extend the time of payment of the balance due on the principal, namely $13,600, to March 1, 1935.

The note, mortgage and agreement of May 22, 1930 were all executed and delivered in the State of Wisconsin and counsel for the respective parties agree that their legal effect is governed by the laws of that State. Counsel also agree that under the law of Wisconsin the assumption of the payment of a debt, secured by a mortgage cannot be implied but must be express and in the instant case it is conceded that prior to the execution of the instrument of May 22, 1930 there was no express assumption by the Wiedenhoefts of the indebtedness secured by the mortgage executed by the McFarlins on October 31, 1919.

The issue presented here for determination involves therefore the construction of the instrument of May 22, 1930 and is whether or not appellee did in fact extend the payment of McFarlin's indebtedness and

whether by that instrument the Wiedenhoefts agreed to pay said indebtedness. By the express terms of this agreement the maturity of the principal indebtedness was not extended but by its provisions appellee was barred until after August 1, 1930 from instituting a suit to foreclose her mortgage. The original note matured on March 1, 1930. At that time $13,600 was due, being the balance remaining unpaid of the principal sum together with $680 interest. On and after March 1, 1930 the makers of the note evidencing that indebtedness, namely the McFarlins, had the legal right to pay that indebtedness and if they had done so they would have been subrogated to the rights which the holder of said note and mortgage had. After the execution of the instrument of May 22, 1930 and on or before August 1, 1930 if the makers had paid their note and become subrogated to the rights of the holder thereof, their rights, in equity, would have been subject to the provisions of the agreement of May 22, 1930, which had been made without their knowledge and consent. During this period of time certainly the holder's right of action against the mortgaged premises was suspended and if her rights were suspended, the rights of the makers of the note and the mortgagors of the premises, in the event they had paid the indebtedness and had become subrogated to the rights of the holder, would likewise have been suspended. The intention of the parties in making this agreement of May 22, 1930 must be gathered from the whole context of the instrument and the interpretation must be arrived at from a consideration of the entire document and not some particular part thereof. The agreement stated that it was to become null and void unless $380 was paid by the Wiedenhoefts on or before August 1, 1930. If that sum was paid as provided in the agreement, then the payment of the principal sum was extended to March 1, 1935. The effect of this provision was to extend the payment of $380, which was then past due,

until August 1, 1930 and pending the arrival of that date the only reasonable conclusion which can be arrived at, consistent with the purposes sought to be attained by the execution of this instrument, is that appellee would take no steps to foreclose. What the Wiedenhoefts desired, so the instrument recites, was to have the payment of the $13,600 extended for five years from March 1, 1930.

Having concluded that by the provisions of the instrument of May 22, 1930 the payment of the indebtedness then due was extended to August 1, 1930, the question then arises, did the Wiedenhoefts, the then owners of the mortgaged premises by that instrument agree to pay the mortgaged debt? It is apparent that the consideration for the execution of the instrument by appellee was the payment by the Wiedenhoefts to appellee of $300 on the day the instrument was executed. The agreement so recites. The instrument obligates the Wiedenhoefts to keep and perform the covenants and agreements contained in the note and mortgage except as changed by their agreement of May 22, 1930. One of the agreements of the note and mortgage was to pay the principal sum of $13,600 on March 1, 1930 and $680 interest thereon due that day. In what way did the agreement of May 22, 1930 change this? By the express terms of that agreement the payment of $380 of that sum was extended to August 1, 1930 and what the agreement must have implied was that the payment of the $13,600 was likewise extended to August 1, 1930. This is the construction the parties themselves placed upon this instrument. The ninth paragraph of the instrument uses the word "extension" and provides among other things that the principal sum of $13,600 then due, together with accrued interest thereon, shall become immediately due. When? In case of default in payment of $380 on or before August 1, 1930.

Prior to the execution of this instrument the Wiedenhoefts were not legally obligated to pay the indebtedness secured by this mortgage or any part thereof. By its terms they agreed to pay that indebtedness and in consideration of the sum of $300 which they that day paid, appellee expressly extended the payment of $380 of the indebtedness secured by the McFarlin mortgage and impliedly extended the payment of $13,600 principal sum then past due until August 1, 1930. This being true the mortgagors became discharged from personal liability.

In *Prudential Ins. Co. of America v. Bass,* 357 Ill. 72, the court says: " 'When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for payment of the debt but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect by the operation of equitable principles upon the relations subsisting between the mortgagor, the grantee and the mortgagee. As between the mortgagor and the grantee, the grantee becomes the principal debtor, primarily liable for the debt, and the mortgagor becomes the surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship and to respect the rights of the surety in all his subsequent dealings with them. . . . While the mortgagee may release the mortgage without discharging the grantee, his release of the grantee, or his valid extension of the time of payment to the grantee without the mortgagor's consent, would operate to discharge the mortgagor.' "

In Reeve, Illinois Law of Mortgages and Foreclosures, vol. 1, sec. 310, the author states: "It is said

that a mortgagor is released from liability for the mortgage debt when he conveys the property subject to the mortgage, which the grantee assumes to pay, and thereafter without the knowledge of the mortgagor, the mortgagee enters into an agreement with the grantee, extending the time for paying the mortgage debt, the reason for the rule being that by making such a contract with the mortgagor's grantee, the original obligation of the mortgagor is materially changed.''

The trial court erred in rendering judgment against appellant and that judgment is reversed.

*Judgment reversed.*