Charles H. Albers, Appellee, v. Arthur S. Moe et al., Appellants.

Gen. No. 40,564.

Opinion filed June 26, 1940.

McNab, Holmes & Long, of Chicago, for certain appellants; Joseph T. Scott, of Chicago, of counsel.

Philip J. McKenna and Millard R. Elmes, both of Chicago, for appellee.

Mr. Justice John J. Sullivan delivered the opinion of the court.

This proceeding was brought by Charles H. Albers, receiver of the Northbrook State Bank, to foreclose a trust deed securing a $4,000 note executed by Arthur S. Moe and to charge the defendants with any deficiency due plaintiff after the sale of the foreclosed property. Plaintiff's claim for the deficiency judgment against defendants William E. Webster and Sarah Maude Webster, his wife (hereinafter for convenience sometimes referred to as the defendants) is based entirely upon two extension agreements executed by them, one in 1927 and the other in 1930. The cause was referred to a master in chancery and in accordance with his recommendation a decree of foreclosure was entered

on July 6, 1938, which found *inter alia* that the Websters were personally liable for the amount found due plaintiff and ordered that if a deficiency existed after the sale of the premises and the application of the proceeds thereof to plaintiff's indebtedness "the court shall have full power and authority to enter a personal judgment against the defendants William E. Webster and Sarah Maude Webster, his wife, who are personally liable therefor." The property was sold at a master's sale and a deficiency of $3,436.36 was reported to the court. By a decree entered August 19, 1928, the master's report of sale and distribution was approved and a judgment was entered in favor of plaintiff and against the Websters for the amount of such deficiency. William E. Webster and Sarah Maude Webster appeal from that portion of the decree of foreclosure which found them personally liable and authorized a judgment against them for any deficiency after sale and from that portion of the decree of August 19, 1938, which directed that judgment be entered against them for the amount of the deficiency.

On July 22, 1924, Arthur S. Moe executed and delivered his principal promissory note for $4,000, due three years after date and bearing interest at the rate of 6 per cent per annum, together with his trust deed conveying certain real estate in Cook county, Illinois, as security for the payment of said principal note and the interest coupons attached thereto. After the execution and delivery of said note and trust deed Moe conveyed the premises to William E. Webster. In the warranty deed from Moe to Webster there was no assumption by the latter of the pre-existing mortgage indebtedness. After the note matured July 22, 1927, the Northbrook State Bank, the owner and holder thereof, and William E. Webster and Sarah Maude Webster entered into a written agreement on July 25, 1927, which extended the time of payment of said note for a period of three years, with interest at the rate of 6 per cent per annum, evidenced by six interest notes

and coupons executed by the Websters. When the note matured under the terms of the extension agreement of July 25, 1927, a second extension agreement was entered into by the bank and the Websters on July 22, 1930, whereby the maturity of said note was extended for a further two-year period with interest at the rate of 6 per cent per annum, evidenced by four interest notes or coupons executed by the Websters. The Websters paid all of the interest notes signed by them and also paid interest until January 22, 1935, which was two and a half years after the expiration of the last extension agreement. Moe was not a party to either of the extension agreements nor did he have any knowledge of same.

Plaintiff's complaint to foreclose, filed December 3, 1937, named Arthur S. Moe and the Websters parties defendant and included a prayer that in the event the proceeds of the foreclosure sale "were not sufficient to pay the full amount found to be due the plaintiff . . . a deficiency decree be entered in favor of the plaintiff and against such of the defendants as may be found to be personally liable to pay such deficiency." No service was had on Moe and the suit was dismissed as to him. Plaintiff then amended his complaint by pleading the two extension agreements in *haec verba*. These agreements are identical in form and language except as to their dates and the periods covered.

Inasmuch as William E. Webster did not assume and agree to pay the mortgage indebtedness in his deed from the mortgagor, Arthur S. Moe, the only question presented for our determination is whether or not the Websters by executing the two extension agreements obligated themselves to pay the principal due on the Moe note.

The agreement of July 25, 1927, for the extension of the loan is as follows:

"MEMORANDUM OF AGREEMENT, Made and entered into this 25th day of July 1927 between Northbrook State

Bank of the County of Cook and State of Illinois party of the first part, and William E. Webster and Sarah Maude Webster of the County of Cook and State of Illinois party of the second part;

"WITNESSETH, Whereas said party of the first part is the legal owner and holder of the certain promissory note . . . made by Arthur S. Moe, a bachelor, dated July 22nd, 1924, in the sum of Four Thousand ($4,000.00) Dollars, payable on or before 3 years after said date, to the order of himself and by him endorsed and delivered, which notes are secured by a deed of trust from Arthur S. Moe, a bachelor to W. P. Melzer Trustee, conveying the premises situated in the County of Cook and State of Illinois, described as follows, to-wit: (Legal Description of Premises Conveyed.) which deed is recorded in the Registrar's Office of Cook County, in the State of Illinois, in Book 275 of Records, on page 262 as Document number 236006 and . . .

"AND WHEREAS, *Said second party desires to have the payment of Four Thousand ($4,000.00) Dollars of said note . . . of Four Thousand ($4,000.00) Dollars extended for three years from July 22nd, 1927, in consideration of the agreement hereinafter made on his part;*

"Now, THEREFORE, *Said party of the first part agrees to extend the payment of Four Thousand ($4,000.00) Dollars of said note of Four Thousand ($4,000.00) Dollars* for three years from July 22nd, *1927,* that is to say until July 22nd, 1930, *so long as the said party of the second part shall promptly pay interest thereon from July 22nd,* 1927, at the rate of six per cent. per annum, payable semi-annually at the place in said note . . . mentioned, *and shall further keep and perform all and singular the covenants and agreements in said note . . . and trust deed contained.*

"And the *said party of the second part hereby agrees to and accepts said extension upon the conditions aforesaid,* and has executed his six interest notes or coupons

of One Hundred Twenty Dollars each, evidencing and securing the interest on said note . . . for the time of such extension,. and agrees that in case of default in the payment of any one of said interest payments, and in case of a failure to keep and perform any one of the covenants and agreements in said notes and trust deed contained, this agreement shall at once become null and void at the option of said party of the first part, and said note—of Four Thousand ($4,000.00) Dollars shall at once become due and payable, and may be collected without notice, together with the accrued interest thereon, at the rate of six per cent. per annum, anything hereinbefore contained to the contrary notwithstanding.

"IT IS FURTHER AGREED, That this agreement shall be binding upon and inure to the heirs, executors, administrators and assigns of both parties hereto.

"WITNESS The hands and seals of the parties hereto the day and year first above written.

NORTHBROOK STATE BANK
     Herman Muir, Cashier (Seal)
     William E. Webster   (Seal)
     Sarah Maude Webster (Seal) "(Italics ours.)

Defendants claim that the only obligation they assumed under the extension agreements was to pay the interest for the extended periods as evidenced by the interest coupons which they executed, while plaintiff insists that under said agreements they directly assumed the payment of the principal of the Moe note, as well as the interest thereon.

Under what circumstances was the first extension granted? As heretofore stated, Moe executed the principal note for $4,000 and the trust deed securing same. He then conveyed the premises to Webster by warranty deed, but in said deed there was no assumption of the mortgage by Webster. Subsequent to the purchase of the property by them, the Websters paid the taxes and

all the interest coupons on the Moe note. When the Moe note matured on July 22, 1927, it was not paid. In order to avoid foreclosure the Websters desired to have the note extended. Their application to the bank for a three-year extension was granted upon their undertaking not only to pay interest on the note during the extended period but to "further keep and perform all and singular the covenants and agreements in said note and trust deed contained." The most important covenant of the note and trust deed was, of course, that relating to the payment of the principal amount of the note.

What then is the proper interpretation to be given the extension agreements? The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles. Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. (13 C. J. pp. 521 and 523, sec. 482.) The contract for the extension of July 25, 1927, after reciting that "said second party [Websters] desires to have the payment" of the $4,000 note "extended for three years from July 22, 1927, in consideration of the agreement hereinafter made on his part," provided that the bank agreed to the three-year extension "so long as" the Websters "shall promptly pay interest . . . and shall further keep and perform all and singular the covenants and agreements in said note and trust deed contained" and provided further that said second party "agrees to and accepts said extension upon the conditions aforesaid." There is nothing ambiguous about this language and we think it clearly indicates that it was the intention of the parties that the Websters agreed to and did assume the obligation of paying the $4,000 Moe note.

Much time is devoted in defendants' brief and argument to distinguishing between conditions subsequent

and promises and the legal effect of each. They insist that the language ''the said party of the second part . . . shall further keep and perform all and singular the covenants and agreements in said note and trust deed contained,'' as employed in the extension agreements, properly construed, constitutes only conditions subsequent limiting the promise made by the bank and that the only promise made by them was to pay the interest on the note for the extended periods. The difficulty with defendants' position in this regard, in our opinion, is that the purported conditions subsequent were not within the contemplation of the parties when the extension agreements were executed. In consideration of the granting of the extensions by the bank the agreements did impose certain conditions upon the Websters and they expressly agreed to and accepted the extensions upon the conditions heretofore set forth. The conditions referred to and the word ''conditions'' as used in the extension agreements were not intended to mean conditions subsequent but rather the terms, covenants, stipulations or obligations agreed to by the parties.

We are not unmindful of the rule that to render a grantee personally liable for a pre-existent mortgage indebtedness there must be language in the deed or contract which clearly imports that the grantee assumes the obligation of paying the debt (*Siegel v. Borland,* 191 Ill. 107; *Drury v. Holden,* 121 Ill. 130), or of the rule that the assumption of the mortgage by the purchaser will not be presumed (*Lange v. Bartlett,* 207 Ill. App. 422). However, even though the provisions of the extension agreements before us could have been more aptly phrased, they leave no room for doubt that the defendants directly assumed and agreed to pay the $4,000 Moe note and we are therefore impelled to hold that the Websters are personally liable for the deficiency.

We have carefully examined all the authorities cited by defendants but feel that it would serve no useful

purpose to discuss them in view of the interpretation given by us to the extension agreements.

For the reasons stated herein those portions of the decree of foreclosure of July 6, 1938, and of the decree of August 19, 1938, from which this appeal is prosecuted, are affirmed.

*Portions of decree affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.