Chicago Title and Trust Company, Trustee, Appellee,
v. See-Moon and Company et al., Defendants.

Appeal of Margaret Kempf, Appellant.

Gen. No. 41,647.

Heard in the third division of
this court for the first district at the April term, 1941.
Opinion filed January 7, 1942.

HARRY M. EHRLICH, of Chicago, for appellant.

NICHOLAS J. MADGEY, ECKERT & PETERSON and A. EDMUND PETERSON, all of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the defendant, Margaret Kempf, from a deficiency decree in the sum of $66,552.75 entered against her in a real estate foreclosure suit, the subject matter of this litigation.

The theory of the plaintiff is that by the execution of certain extension agreements hereinafter described, the said defendant became personally liable to the plaintiff for the indebtedness secured by the trust deed foreclosed herein. The theory of the defendant, on the other hand, is that when she executed the extension agreements herein, she had no right, title or interest in and to the property herein foreclosed or in the indebtedness secured by the trust deed foreclosed herein; that she signed the said extension agreements merely to release her right of dower, if any, or as a surety or guarantor for her husband, and therefore did not become personally liable for the indebtedness herein; that by the terms of the extension agreements she agreed to pay only the interest on the indebtedness extended and the only remedy or damages provided for nonperformance was that the agreement shall become void and of no effect.

The facts as related by this defendant are that on May 22, 1922, the defendant, See-Moon and Company, a corporation, was the owner of the property involved herein. It executed, on said date, the 125 bonds aggregating the sum of $100,000, due in 10 years, and also the trust deed securing the same, which was foreclosed in the proceedings herein. Thereafter, by a deed dated October 1, 1923, and recorded October 4, 1923, the said See-Moon and Company conveyed the premises herein to the defendants, Michael Clamage,

Morris Chalfin and Phillip Koff, who assumed and agreed to pay the said indebtedness who in turn conveyed to Otto C. Kraemer, who also assumed and agreed to pay the said indebtedness. Thereafter by a deed dated March 29, 1927, and recorded April 2, 1927, the said Kraemer and wife conveyed the premises to Konrad W. Kempf, the husband of the defendant appellant herein, subject to the said indebtedness.

Afterwards, by a deed dated December 17, 1930, and recorded July 20, 1932, the said Konrad W. Kempf and Margaret Kempf, his wife, conveyed the said premises to the defendant, Margaretha Olhausen, which deed was delivered to Harry M. Ehrlich, who in February 1939, after the death of said K. W. Kempf, delivered the same to Margaretha Olhausen, who then took possession of the premises and collected the rents therefrom.

On May 22, 1932, the indebtedness became due and K. W. Kempf and Margaret Kempf executed a three year extension agreement, duplicates of which were attached to each of the 125 bonds. Three years later, on May 22, 1935, the indebtedness again became due and K. W. Kempf and Margaret Kempf entered into an extension agreement with Fred Wittenberg and Company, as agent for the bondholders, whereby the payment of said bonds was extended for a period of three years, and a memorandum of said extension agreement was attached to each of the 125 bonds. On May 22, 1938, the said indebtedness again became due and K. W. Kempf and Margaret Kempf entered into an extension agreement with Fred Wittenberg and Company, as agent for the bondholders, whereby the payment of said bonds was extended for a period of five years, and a memorandum of said extension agreement was attached to each of the 125 bonds. The interest due November 22, 1938 on the said extension agreement was paid. Then there was a default in the payment of interest and taxes and this foreclosure followed.

The matter was referred to a master in chancery to take proofs and report his conclusions. The master found that all of the other defendants in the chain of title, who assumed and agreed to pay the indebtedness herein, were discharged from liability because the said extensions were obtained without their knowledge, consent or approval, and also found that upon the occasion of each of said extensions, K. W. Kempf and Margaret Kempf, his wife, agreed to pay the full amount of the indebtedness herein, and by reason thereof Margaret Kempf, individually and as executrix of the estate of K. W. Kempf, was personally liable for the amounts found due to the plaintiff.

The objections and exceptions of Margaret Kempf were overruled and a decree was entered in accordance with the findings of the master. A sale of the property was had, pursuant to said decree, and the property was sold to C. O. Frisbie, Jr., as nominee for the bondholders' committee, for $50,000. The report of sale showed a deficiency of $66,552.75. On November 4, 1940, an order was entered approving the master's report of sale and distribution and a deficiency decree was entered against Margaret Kempf and Margaret Kempf, as executrix, for the said sum of $66,552.75. The defendant, Margaret Kempf, individually, appeals from the said deficiency decree.

It is the contention of defendant appellant that the court erred in holding that she was personally liable for the indebtedness involved herein, and erred in entering a deficiency decree against her. It is suggested that K. W. Kempf and Margaret Kempf did not sign the bonds or the trust deed foreclosed herein, that the deed by which K. W. Kempf acquired title to the premises named him alone as grantee and was merely subject to the indebtedness in question, and that neither the defendant, Margaret Kempf, nor her husband assumed and agreed to pay the same. In support of her contention, defendant suggests that

the liability, if any, of herself and her husband, for the indebtedness herein arises only by reason of the said extension agreements executed by them; that the extension agreements of May 22, 1932, and of May 22, 1935, were discharged by the execution of the extension agreement of May 22, 1938; and that, therefore, the terms and provisions of the last mentioned extension agreement govern the rights and liabilities of the parties hereto.

It appears from the last mentioned extension agreement that it provides in substance that K. W. Kempf and Margaret Kempf shall pay on the entire amount of all of the 125 bonds, interest at the rate of 4½ per cent per annum; that they will cause to be attached to each of the 125 bonds a memorandum of this extension agreement; that all provisions, stipulations, powers and covenants in said bond and in said trust deed contained, shall stand and remain unchanged and in full force and effect for and during said extension period; that in the event of the failure to pay the principal of said bonds, or any extension interest coupons, or to keep, fulfill or perform any of the covenants and agreements in the trust deed, then this extension agreement shall become void and be of no effect, the same as if this extension agreement had not been granted.

The appellant defendant submits, as a question which is the subject of the controversy, that the facts and circumstances clearly show that the parties did not intend that K. W. Kempf and Margaret Kempf should become personally liable for the principal indebtedness evidenced by the said bonds and secured by the trust deed; and that the execution of the extension agreement and the interest coupons did not create a personal liability for the principal of the bonds.

The plaintiff replies to defendants' proposition by contending that the extension agreements were founded upon good and sufficient consideration to sup-

port the promise of the defendant, Margaret Kempf, to pay the indebtedness secured by the trust deed. It is contended that an understanding or agreement of forbearance to sue, followed by actual forbearance is a sufficient consideration. The case of *Weisse v. Fowler,* 176 Ill. App. 260, is cited in support of plaintiff's contention.

It would appear from the record that the defendant appellant's principal theory is based upon her erroneous assumption that she was a stranger in law to the mortgaged premises. She married Mr. Kempf in 1926, prior to his acquiring title to the mortgaged real estate and prior to the signing by her husband and herself of the three extension agreements of 1932, 1935 and 1938. It appears from her testimony that she signed the extension agreement of 1938 on June 9, 1938, in her husband's office. She admitted that "I read the extension agreement before I signed it. It was given to me for my signature in Mr. Kempf's office. I was signing for an extension of the interest on this property." On cross-examination, she made the further statement that "in 1932 I knew that my husband owned the property. He told me to sign these agreements, because he said it was customary for the wife to sign whenever the husband signs. Nothing was ever said to me that the bonds had reached the date when they should be paid. I read this document where it is said that it is just the interest got to be paid by the people who sign. I read that document all the way through. I did not read this short document. . . . (The extension agreements executed in 1932, 1935 and 1938.) In each case my husband's signature was already there. I had confidence in him." It appears further that she testified "Mr. Kempf told me it was necessary for a wife to sign these papers with the husband, and that is all I know about it." As to the 1932 extension agreement, Mrs. Kempf testified, "I wouldn't remember whether I was present when

Mr. Kempf signed the agreement to pay the original indebtedness dated May 22, 1932. It is his signature. He did not sign that extension agreement the same time I did, because he told me to come down to the office and sign it. I suppose he had just signed them at that time. I don't know whether he received any money for signing that. I did not at any time make any promise to Mr. Wittenberg or to any bondholder to the effect that I would pay the original amount of the bonds." From the testimony above quoted, it appears that Mrs. Kempf signed these extension agreements at her husband's request and direction. She admitted he was the owner of the property in 1932, when she signed the first extension agreement. Finally, it appears that the defendant signed these documents voluntarily. No fraud or duress was involved. The three agreements were signed by her either for the benefit which might accrue to her, or indirectly to her husband in obtaining the extension of time and the forbearance by the bondholders. In the case of *First Nat. Bank of Crown Point, Ind. v. Davis,* 146 Ill. App. 462, the court affirmed the proposition that forbearance extended to a husband supplies the consideration for the promise of the wife to pay an indebtedness. There the court said:

"A pre-existing debt is a good consideration for a conveyance by way of mortgage. It has always been so held, both in Illinois and Indiana. *McIntire v. Yates,* 104 Ill. 491-501; *Work v. Brayton,* 5 Ind. 396.

"The very seal indeed imports a consideration. *Rendleman v. Rendleman,* 156 Ill. 568. But in this case the evidence found by the master and the court sufficient to establish the fact, tended to show the consideration of a forbearance for at least 30 days of an over-due note, and a conditional extension, dependent on payment of interest during these 30 days. This was an alteration of position and full consideration in the legal sense, even had one other than the pre-

existing debt been necessary." In passing upon the wife's objection that there was no consideration as to her, she not being in title, the court said:

"And if any consideration beyond her husband's pre-existing indebtedness was necessary, it was supplied by the forbearance above noted extended to him." See also, *McLeish v. Hanson,* 157 Ill. App. 605; *Weiland v. Weiland,* 297 Ill. App. 239; Williston on Contracts (Rev. Ed. Vol. 1, sec. 113); and American Law Institute—Restatements of Contracts, sec. 75(2).

The 1938 agreement attached to each of the bonds provided: "In the event of the failure to pay either or any of said extension interest coupons at the time and place when and where the same respectively become due and payable, or to pay the principal of the bond to which this agreement is attached or at the time and place when and where the same becomes due and payable, or upon the failure to keep, fulfill or perform any or all of the covenants and agreements contained in the Trust Deed securing said bond, then the whole of said principal sum of the bond to which this agreement is attached, shall at the election of the holder or holders of the bond to which this agreement is attached, become at once, without notice, due and payable." Said agreement also provided, in a confession of judgment clause, the following:

"And to secure the payment of the principal and interest of the bond to which this agreement is attached, we hereby authorize irrevocably, any attorney of any Court of record to appear for us in such Court, in term time or vacation, at any time hereafter, and confess a judgment without process, in favor of the holder or holders of the bond and extension interest coupons to which this agreement is attached for such amount as may appear to be unpaid thereon, together with the costs and reasonable attorney's fees, and to waive and release all errors which may intervene in any such proceedings, and consent to immediate exe-

cution upon such judgment, hereby ratifying and confirming all that our said attorney may do by virtue thereof.'' It would appear, therefore, from these provisions of the agreement that the defendant and her husband intended to keep, fulfill and perform the covenants and agreements contained in the trust deed securing the bonds. (See *Albers v. Moe,* 306 Ill. App. 208, upon like questions as here raised.)

Finally, upon the question of the construction to be given the language of the agreement of 1938, it would appear that the words ''void and of no effect,'' in the event of default of the extension agreement, was for the benefit of the bondholders and should be construed as meaning ''voidable'' and does not release the defendant from the obligation to pay the indebtedness. In the language of the extension agreements construed in *Albers v. Moe,* 306 Ill. App. 208, and *Lillie v. McFarlin,* 304 Ill. App. 27, the words ''void and of no effect'' are used, but the court, in each of those cases, found the signers of the extension agreements personally liable nevertheless. The court, in the *Albers v. Moe (supra)* case said:

''Defendants claim that the only obligation they assumed under the extension agreements was to pay the interest for the extended periods as evidenced by the interest coupons which they executed, while plaintiff insists that under said agreements they directly assumed the payment of the principal of the Moe note, as well as the interest thereon.'' Again, in this opinion, the court said in passing upon the contract for extension there involved:

''The contract for the extension of July 25, 1927, after reciting that 'said second party (Websters) desires to have the payment' of the $4,000 note 'extended for three years from July 22, 1927, in consideration of the agreement hereinafter made on his part,' provided that the bank agreed to the three-year extension 'so long as' the Websters 'shall

promptly pay interest . . . and shall further keep and perform all and singular the covenants and agreements in said note and trust deed contained' and provided further that said second party 'agrees to and accepts said extension upon the conditions aforesaid.' There is nothing ambiguous about this language and we think it clearly indicates that it was the intention of the parties that the Websters agreed to and did assume the obligation of paying the $4,000 Moe note." In the case of *Soeker v. Kerr,* 202 Mo. App. 22, the trial court construed the words "null and void" to render the contract, after the default in the extension agreement, ineffectual. The appeal court reversed this judgment and found the signers of the extension agreement liable, saying:

"Apparently the trial court took the view that, since the contract contained the condition that it should become 'null and void' in the event of the failure of the defendants to pay any one of the said notes executed by them, then the failure of defendants to pay the last interest note, maturing July 27, 1915, the date of the maturity of the principal note as extended by said contract, operated to render the contract thereafter wholly ineffectual, and thereby released the defendants from their agreement whereby they made themselves personally liable for the payment of the indebtedness evidenced by the principal note. This we believe to be unsound. The condition in question was, we think, clearly one for the benefit of the other party to the contract, then the holder of the note secured by the deed of trust, to be invoked by him at his election. And under the circumstances the word 'void' though used in conjunction with the word 'null' is to be taken as meaning voidable, giving plaintiff's assignor the right to take advantage of a default on the part of the defendants at his option." It is a rather unusual contention of defendant appellant that upon default and failure to pay the exten-

sion interest coupons, the provisions of the extension agreement should be construed so as to relieve the signers of the extension agreement from payment of the principal bonds to which this extension agreement was attached and from performance of the covenants and undertakings contained in said extension agreement. We are of the opinion that the condition, that the agreement be "void and of no effect" was one for the benefit of the holder or holders of the principal bonds—to be invoked by them at their discretion. It would be inequitable if, upon default of payment of interest coupons, the defendant appellant were relieved of all liability which she assumed by the execution of the several extension agreements. We are of the opinion that the reasonable construction of the words "void and of no effect," as used in the instant agreement, is that they mean "voidable," and, therefore, give the plaintiff the right to take advantage of defendant appellant's default at its option, and that the entry of the deficiency decree herein was justified.

The defendant appellant offers the suggestion that the extension agreement contains no such provision on her part to keep and perform all covenants and agreements in the bonds and mortgage; that on the contrary, the extension agreement involved herein merely provides that all of the provisions, stipulations, powers and covenants in said bond and in said trust deed contained shall stand and remain unchanged and in full force and effect, for and during said extended period, except only as the same are herein and hereby specifically varied or amended. This suggestion, however, does not relieve her from the liability which seems to have been clearly incurred by signing this extension agreement.

It is contended by the defendant that the court improperly allowed the plaintiff the sum of $5,395.59 for solicitor's fees, trustee's fees, title charges and other fees and charges, as shown by the foreclosure decree

in this case. It is apparent from the statement made by the defendant that this amount was allowed under the terms and provisions of the trust deed foreclosed, but defendant's contention is that Margaret Kempf did not sign the trust deed and that she did not agree to keep and perform any of the terms or covenants therein contained. However, it appears from this record that the defendant, Margaret Kempf, is liable as a principal, having signed the extension agreement with her husband agreeing to pay the bonds as provided for in the trust deed. Therefore, the court properly allowed this amount.

From the facts as they appear in this record, Mrs. Kempf was a principal with her husband and hence the court did not err in allowing the amount complained of. For the reasons stated, the decree is affirmed.

*Decree affirmed.*

BURKE, P. J., and KILEY, J., concur.