Irving Berry Phillips, Appellant, v. Agnes Dunne O'Connell, Individually and as Executrix and Trustee Under Last Will of Eva Fitch Dunne, Deceased, et al., Appellees.

Gen. Nos. 43,319, 43,328.

Heard in the first division of this court for the first district at the February term, 1945. Opinion filed April 30, 1945. Rehearing denied May 14, 1945. Released for publication May 14, 1945.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellant; FRANK C. BERNARD, of Chicago, of counsel.

GEORGE A. BOSOMBURG, of Chicago, for appellees.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

By this appeal plaintiff seeks the reversal of an order denying a deficiency decree in a trust deed foreclosure proceeding against certain defendants, successors in interest to the mortgaged property, upon an agreement which the court held to be a contract of guaranty. Plaintiff claims that it is an extension agreement in which the defendants assumed and agreed to pay the mortgage indebtedness.

The trust deed being foreclosed was executed January 14, 1927 by Frederick T. Hoyt and Bettie F. Hoyt, his wife, to secure the payment of their principal promissory notes aggregating $37,500; March 29, 1927 the Hoyts conveyed the mortgaged property to Eva Fitch Dunne, subject to the trust deed securing the indebtedness above mentioned, "which indebtedness the grantee herein assumes and agrees to pay." Eva Fitch Dunne died April 14, 1930, and by her last will the mortgaged premises were devised to her daughter Agnes D. O'Connell, defendant, as trustee for herself, J. Paul Dunne, Edith Dunne and Faith Dunne Kirkley, children of the testatrix. The balance of $28,500 of the principal indebtedness secured by the trust deed coming due and payable January 14, 1932, the four beneficiaries of the trust, individually, and Agnes

Dunne O'Connell, as executrix and trustee under the will of Eva Fitch Dunne, deceased, under date of December 31, 1931 executed the agreement in controversy, hereinafter called the extension agreement. It recited the execution of the trust deed, the holding of the notes secured thereby by The Northern Trust Company, the payment of $9,000 on the principal of said notes, and (in typewriting) that "WHEREAS, Agnes Dunne O'Connell individually and as executrix and trustee under the will of Eva Fitch Dunne, deceased, Edith E. Dunne, Mary Faith Kirkley, J. Paul Dunne have requested of The Northern Trust Company an extension of the above indebtedness and in consideration for said extension hereby guarantee payment of the same." The operative part (mostly printed) provided that, in consideration of the mutual promises and agreements thereinafter made by and between the parties, The Northern Trust Company agrees to extend the payment of the balance due on said indebtedness for one year, namely, until January 14, 1933, and the said beneficiaries under the trust, and Agnes Dunne O'Connell, as executrix and trustee, agree with The Northern Trust Company that they will pay to the legal owner of the notes the sum of $28,500 January 14, 1933, with interest at six per cent, and further, that the parties mutually agree that "all of the provisions, stipulations, powers and covenants in the said principal note, and in the said Trust Deed contained, shall stand and remain unchanged and in full force and effect for and during said extended period . . . except as changed or modified in express terms by this agreement."

Default having been made in the payment of the mortgage indebtedness as provided in the agreement for an extension of the time of payment, suit was instituted against the signers of the extension agreement and The Northern Trust Company, trustee. Faith Dunne Kirkley having died before the com-

plaint was filed, James M. Kirkley, Sr., her divorced husband, James M. Kirkley, Jr., her son, and Edith Dunne, as trustee under her last will and testament, were made defendants. The complaint consisted of two counts: Count 1, being the ordinary foreclosure complaint in equity asking for a deficiency decree against those personally liable therefor; and Count 2, setting up an action at law for the mortgage indebtedness. Defendants Agnes O'Connell and Edith Dunne, individually and in their representative capacities, filed answers denying execution of the extension agreement in its final form, and alleging alteration of the agreement by striking from the body of it the name of Josephine Dunne, wife of J. Paul Dunne, and the failure of Josephine Dunne to sign it.

A decree of foreclosure was entered directing a sale of the mortgaged premises and reserving jurisdiction for the purpose of determining the personal liability, if any, of the defendants for a deficiency. A sale of the premises was had and a decree approving same was entered June 14, 1938, finding a deficiency of $14,170.24, together with interest at five per cent from June 1, 1938. Shortly thereafter an order was entered referring the cause to a master in chancery "on the question of what persons, if any, are personally liable for the deficiency found in the former decree of this court," and denying defendants' countermotion that the matter be transferred to the law side of the court for a trial by jury. The master to whom the cause had been referred having been elected to the office of judge, a special commissioner was appointed who filed his report February 11, 1943. Plaintiff then moved for a decree against J. Paul Dunne, who had been defaulted, Agnes O'Connell, individually and as executrix and trustee, and Edith Dunne, individually, for the deficiency, then computed to be $9,945. He did not ask for a deficiency decree against the defendants substituted for Faith

Dunne Kirkley. Plaintiff's objections to the report were permitted to stand as exceptions, and on hearing before the chancellor he, disregarding the commissioner's report, held that the extension agreement was a contract of guaranty and not one in which the defendants, successors in interest to the mortgaged property, assumed and agreed to pay the indebtedness secured by the trust deed being foreclosed, and, by an order entered July 16, 1943, as amended July 28, 1943 (hereafter referred to as the 1943 orders), denied plaintiff's motion for a deficiency decree and, on defendants' motion, transferred the cause to the law side of the court for a trial by a jury of the issues under count 2 of the complaint. The special commissioner's report was stricken from the files and jurisdiction in chancery retained for the purpose of determining the fees of the special commissioner after determination and disposition of the issues under count 2 on the law side of the court. From these orders plaintiff appealed, and on defendants' motion we dismissed the appeal, holding that the orders were not final and appealable orders so long as the issues under count 2 were pending and undisposed of. (322 Ill. App. 164.) The mandate being filed, the court on June 30, 1944 ordered that "count 2 of the complaint be dismissed without prejudice on plaintiff's motion and without prejudice to the defendants' right, if any, of a jury trial," and gave leave to plaintiff to file instanter his petition to vacate the 1943 orders. By their answer to plaintiff's petition defendants Agnes O'Connell, individually and as trustee, and Edith Dunne, individually, alleged among other matters that plaintiff's claim for a deficiency was fully satisfied by settlement of his claim for deficiency against the estate of Frederick T. Hoyt, deceased, one of the makers of the original notes. On October 16, 1944 plaintiff's petition was denied. His appeal from that order and the 1943 orders are before us in cause

43319. Shortly thereafter, upon leave granted, plaintiff appealed from the order of June 30, 1944 dismissing count 2 of his complaint on his motion, and from the 1943 orders. This appeal is numbered 43328. The appeals have been consolidated. Defendants have filed a motion to dismiss the appeal numbered 43328, and this motion has been reserved to final hearing.

The situation here presented by the 1943 orders denying a deficiency decree in the equity proceeding and transferring plaintiff's action at law under count 2 for the balance unpaid on the mortgage notes to the law side of the court for a jury trial, is analogous to the situation created under the former Practice Act when a complaint in chancery was dismissed as to a part of the defendants and jurisdiction retained for disposition of the cause as to the remaining defendants. In such case it was held that there could be no appeal from the order of dismissal until the final disposition of the case. As said in *Foote v. Yarlott,* 238 Ill. 54, 57; "The order was interlocutory and not appealable, since there can be no appeal until there has been a complete disposition of a cause as to all parties . . . . . . . . there could be no appeal until the final decree, when the whole record, including the order of dismissal, might be brought up for review. (*Dreyer v. Goldy,* 171 Ill. 434; *Pain v. Kinney,* 175 id. 264; *Brodhead v. Minges,* 198 id. 513.)" A similar practice prevails under the Civil Practice Act. In *Walters v. Mercantile Nat. Bank of Chicago,* 380 Ill. 477, the court of its own motion dismissed an appeal from a decree determining some but not all of the issues raised by the pleadings, and said (487): "The applicable provisions of the Civil Practice Act, even if construed to authorize separate decrees to be entered in a case of this kind, do not make such decrees final until the termination of the litigation by the decision of all the questions and issues raised between all the parties to the suit. (*Rogers v. Barton,* 375 Ill.

611; *McDonald v. Walsh*, 367 id. 529.) When the case is thus disposed of any party feeling himself aggrieved may perfect an appeal from any and all orders entered. Until that time, all such orders are interlocutory and cannot be reviewed on appeal.'' The 1943 orders did not become final and appealable until the disposition of the issues presented by count 2, so the time within which such orders might be appealed from did not begin to run until the entry of the order disposing of count 2. Since the petition to vacate the 1943 orders was entered concurrently with the dismissal of count 2, that count was not finally disposed of until denial of the motion to vacate on October 16, 1944. *Majewski v. Pozdol*, 195 Ill. App. 400, 403. Under section 74 (subpar. 1) of the Practice Act appeals ''. . . shall be deemed to present to the court all issues which heretofore have been presented by appeal and writ of error.'' Under the former Practice Act the entire record was subject to review on writ of error. *Drummer Creek Drain. Dist. v. Roth*, 244 Ill. 68, 72. In *Bride v. Stormer*, 368 Ill. 524, the right of plaintiff to appeal from an order dismissing a complaint to foreclose a trust deed as to one of the defendants against whom a deficiency was sought, entered more than three months before the final decree determining the amount of the deficiency and ordering execution against the remaining defendant, was questioned. The court said (p. 528) : ''Appellants could have reviewed both these decrees by a single writ of error before the adoption of the Civil Practice Act, and now, in view of section 74 (1), *supra*, both decrees may be reviewed by one appeal. The contention that the notice of appeal filed March 12, 1937, could not include the decree of November 19, 1936, cannot be sustained.'' It was therefore proper to include the 1943 orders in the notice of appeal when appealing from the Order of October 16, 1944 denying the motion to vacate the 1943 orders.

In the second appeal it is immaterial whether the order of June 30, 1944 dismissing count 2 is appealable by plaintiff because entered on his motion. Rule 33 (2) of the Supreme Court, prescribing the form and contents of a notice of appeal, provides that such notice "shall specify and describe the order, determination, decision, judgment or decree which is being appealed from, and if the appeal is from a part thereof only, it shall specify which part," and (subpar. 3), that such notice "shall state what judgment, decrees, orders or proceedings are desired from the reviewing court by way of relief." Plaintiff does not seek reversal or modification of the order dismissing count 2. It was not necessary to include it in the orders appealed from, although, as heretofore shown, that order and the subsequent order of October 16, 1944, refusing to vacate the 1943 orders, made the 1943 orders final and appealable. The orders of 1943 having been properly included in the first appeal, the second appeal was unnecessary. In view of the position taken by the defendants it was an advisable cautionary measure, and was allowed by us. It will be dismissed without costs.

Defendants contend that although the 1943 orders were not appealable, they were final, and the trial court was without jurisdiction to entertain plaintiff's motion to vacate such orders. This position cannot be sustained. In *Sheaff v. Spindler*, 339 Ill. 540, a similar objection was made. In that case plaintiff filed a bill to quiet title; the demurrer of defendant Duplissis was sustained and the bill dismissed as to him November 28, 1921; within the term the order of dismissal was modified by adding, "Appeal prayed and allowed to . . . , which appeal is to be perfected at the time of the final disposition of this cause"; Duplissis died March 2, 1928 and, the case not having been disposed of, plaintiff suggested the death of Duplissis, and his executors and others in-

terested in the distribution of his estate were substituted as defendants; plaintiff then moved to vacate the order of November 28, 1921 sustaining the demurrer of Duplissis; on February 25, 1929 the motion to vacate was denied and bill dismissed as to all defendants; plaintiff then appealed. The reviewing court overruled the objection of the executors and representatives of Duplissis that the trial court was without jurisdiction to enter the substitution of the executor and representatives upon suggestion of the death of Duplissis, and reversed the decree and remanded the cause with directions to set aside the order sustaining the demurrer and to overrule it, etc. In *Barnes v. American Brake-Beam Co.*, 238 Ill. 582, and *Rogers v. Barton*, 375 Ill. 611, where, as in the case before us, orders were entered final in their nature as to certain matters contested between the parties, but jurisdiction was retained for the determination of other matters, it was held that until final disposition of the case such orders could be vacated or modified by the trial court.

In denying a deficiency to plaintiff in the foreclosure proceeding the court construed the contract extending the time of payment of the mortgage notes as one of guaranty. This construction was based entirely upon the terms of the contract, and the word "guarantee" in the typewritten recital quoted above was held to control the principal undertaking of the defendants in the operative portion of the contract to pay the balance due on the notes. In consideration of this undertaking to pay, the legal owner of the notes extended the time of payment. There is no ambiguity or uncertainty in any of the provisions in the operative portion of the contract. In *Chicago Daily News v. Kohler*, 360 Ill. 351, where, as in the case before us, the recital was typed and the operative portions of the contract were printed, the court said (pp. 362, 363): "The operative part of the agreement is clear and free

from ambiguity. Mere recitals, whether they are found in a preamble or at the end of a contract, are distinguishable from obligations or promises. The contract itself is one of bargain and sale, and its clearly expressed stipulations cannot be controlled by but must prevail over the recitals. (*Williams v. Barkley*, 165 N. Y. 48; *Hansbarger v. Hansbarger*, 206 Mich. 281; *Irwin's Bank v. Fletcher Savings and Trust Co.*, 195 Ind. 669.)'' To the same effect are *Dunlop v. Lamb*, 182 Ill. 319, 328; *Burgess v. Badger*, 124 Ill. 288, 293. The word ''guarantee,'' if it were in the operative portion of the contract, would not necessarily determine the character of defendants' obligation. That is to be determined by the terms of the contract and the circumstances under which it was made. *Vermont Marble Co. v. Bayne*, 356 Ill. 127; *Pan-American Bank & Trust Co. v. National City Bank of New York*, 6 F. (2d) 762; *Everts v. Matteson*, 21 Cal. (2d) 437, 449. In the *Everts* case the court had under consideration an agreement for the extension of a mortgage indebtedness which the grantees of the mortgaged premises had assumed and agreed to pay; that agreement provided that in consideration of the extension of the note the grantees ''hereby guarantee the payment of the aforesaid note,'' and that ''this guaranty shall not be affected by any forbearance . . . And I (we) hereby promise to pay'' the amount remaining unpaid at the times and in the several amounts therein specified. The court held that the agreement could not be construed as a contract of guaranty; that by it the grantees were assuming the trust deed indebtedness and becoming primary debtors on the obligation. A like holding was reached in *Birkhofer v. Krumm*, 4 Cal. App. (2d) 43, 40 P. (2d) 553. The trial court erred in holding the extension agreement to be a contract of guaranty. By its terms the defendants assumed and agreed to pay the mortgage indebtedness. The court had jurisdiction in a fore-

closure proceeding to enter a deficiency decree against persons assuming the mortgage indebtedness. *Albers v. Moe*, 306 Ill. App. 208; *Chicago Title & Trust Co. v. See-Moon & Co.*, 312 Ill. App. 527. It follows that the trial court erred in entering the 1943 orders and in refusing to vacate them. The report of the special commissioner has not been considered by the trial court. On the motion to vacate the 1943 orders defendants raised an additional defense to their alleged liability for a deficiency decree. That defense, if persisted in, should be set up by answer to the complaint upon leave granted by the trial court.

The orders appealed from are reversed and the cause is remanded for further proceedings in accord with this opinion.

*Reversed and remanded.*

MATCHETT and O'CONNOR, JJ., concur.