**Everett Simpson, Appellant, v. Hazel Harrison, Appellee.**

**Gen. No. 43,424.**

426

Opinion filed April 11, 1946. Released for publication May 16, 1946.

EVERETT SIMPSON, *pro se.*

EARL J. NEAL and B. G. CLANTON, both of Chicago, for appellee; B. G. CLANTON, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

■ Everett Simpson, an attorney at the Chicago Bar who appears *pro se,* filed an amended complaint in the circuit court against Hazel Harrison, seeking specific performance of an oral agreement to convey to him an undivided one half interest in an improved parcel of real estate in Chicago. Defendant answered, denying the material allegations of the complaint. Upon defendant's motion the cause was referred to a special commissioner "for the purpose of taking proofs and making findings of facts and recommendations of law." Plaintiff's motion to vacate the order of reference was denied. He did not attend the hearing conducted by the commissioner and refused to appear to give evidence. Defendant, a nonresident, appeared and evidence was adduced in her behalf. The commissioner then filed his report recommending that plaintiff's complaint be dismissed, with prejudice. Objections interposed to the report challenging the power or authority of the special commissioner to act in the cause or to render a report were ordered to stand as exceptions. The chancellor approved the report of the commissioner, adjudged that plaintiff's complaint be dismissed, with prejudice, for want of prosecution, and assessed the costs of the proceeding against him. Jurisdiction to fix the fees of the special commissioner and tax them as costs, was reserved, and thereafter fees in the sum of $125 were approved. Plaintiff prosecuted a direct appeal to the Supreme Court, apparently on the assumption that a freehold or the validity of a statute or a construction of the constitution was involved, within the contemplation of section 75 of the Civil Practice Act (Ill. Rev. Stat. 1945, ch. 110, par. 199 [Jones Ill. Stats. Ann. 104.075]); but the Supreme Court held, in *Simpson v. Harrison,* 389 Ill. 588, that in an action for specific performance of a contract to convey real estate, where

the sole contention was whether the chancellor had authority to refer the cause to a special commissioner because of the repeal of the statute authorizing such a reference, the issue raised is one of practice and procedure and does not involve a question of a freehold so as to warrant a direct appeal to the Supreme Court, and accordingly transferred the cause here for determination.

The Chancery Act of 1872 (Cahill Ill. Rev. Stat. 1933, ch. 22, sec. 39, par. 39) provided that "The court may, upon default, or upon issue being joined, refer the cause to a master in chancery, or special commissioner, to take and report evidence, with or without his conclusions thereupon." The only other applicable statutes in which we have been able to find any reference to a special commissioner as an assistant to the chancellor in an equity proceeding are (1) the Divorce Act (Ill. Rev. Stat. 1945, ch. 40), sec. 15 (par. 16) [Jones Ill. Stats. Ann. 109.183]) of which provides in part that "in every suit for a divorce the wife or the husband when it is just and equitable, shall be entitled to alimony during the pendency of the suit, provided that no order or decree for alimony shall be entered until the court or a Master in Chancery or Special Commissioner, to whom the court may refer the cause, shall have determined from evidence the condition in life of the parties and their circumstances" and sec. 13 (par. 14) of which makes a similar provision with respect to the custody of children; and (2) the Act concerning separate maintenance of husband or wife (Ill. Rev. Stat. 1945, ch. 68), sec. 1 (par. 22) [Jones Ill. Stats. Ann. 109.189]) of which provides that in separate maintenance proceedings "the court . . . may make such allowance of temporary alimony, attorney's fees, and suit money as may appear just and equitable, as in cases of divorce, and the court may refer the cause to a Master in Chancery or Special Commissioner to take and report evidence with reference to the condi-

tion in life of the parties and their circumstances with or without the Master's or Commissioner's conclusions thereupon." Upon the enactment of the Civil Practice Act, sec. 39 of the Chancery Act was repealed, and in lieu thereof sec. 61 (par. 185 [Jones Ill. Stats. Ann. 104.061]) of the Civil Practice Act was substituted. It provides that "Subject to rules, the court may in any chancery action, or in any action at law in which matters of account are in controversy, on default or upon issue joined, refer the cause to a master or referee to take testimony and report his conclusions thereon." The provisions for references to special commissioners in the Divorce and Separate Maintenance statutes remain unchanged. The Masters in Chancery Act (Ill. Rev. Stat. 1945, ch. 90, sec. 5, par. 5 [Jones Ill. Stats. Ann. 106.26]) provides that "Whenever it shall happen that there is no master in chancery in any county, or when such master shall be of counsel or of kin to either party interested, or otherwise disqualified or unable to act in any suit or matter, the court may appoint a special master to perform the duties of the office in all things concerning such suit or matter; and every special master in chancery so appointed, before entering on the duties of his appointment, shall give bond, with security to be approved by the court, and take and subscribe an oath of office in such suit or matter, which bond and oath shall be filed with the clerk of the court making the appointment and spread upon the records thereof; Provided, however, that said special master shall not be required to give said bond if no funds shall be paid to him in said cause."

It thus appears that since the repeal of sec. 39 of the Chancery Act of 1872, the foregoing statutes on Divorce and Separate Maintenance are the only applicable ones which provide for a reference to a special commissioner, and we have been unable to find any statute enacted since 1874 which in any way employed

that term, or to ascertain the origin of a "special commissioner" in this State as an aid to a court of chancery. It is therefore fair to assume that it was advisedly deleted from the statute when the Civil Practice Act was drafted. Nevertheless, some of the chancery judges in Cook county have continued the practice, as was done in the case at bar, of referring matters to special commissioners, who are not required to give bond, subscribe to an oath of office, or report to the court, as masters in chancery are required to do under paragraphs 4, 10 and 11 of chapter 90, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 106.25, 106.31, 106.32]. It is plaintiff's contention that the reference of this cause to a special commissioner was invalid; that an order of reference based upon a repealed statute renders void all proceedings had pursuant thereto; that in chancery actions statutory authority to order a reference is limited to a master in chancery or, when statutory reasons exist and statutory provisions regulating the appointment are complied with, to a special master in chancery as a substitute for a master; and that there is no longer any authority or justification in law for the reference of the cause to a special commissioner.

For more than 100 years Illinois statutes have made full and ample provision for the appointment of masters in chancery as assistants to the court in equity proceedings. An Act approved March 3, 1845 provided that the several circuit courts of this State should have power to appoint in each county a master in chancery, prescribed his term of office, provided that before entering on the duties of his appointment he should give bond with security to be approved by the court and subscribe to an oath of office, provided for his compensation and empowered him to administer oaths, to compel the attendance of witnesses, order the issuing of writs and injunctions, and perform other duties pertaining to the practice of courts of chancery.

(Revised Statutes of the State of Illinois 1845, ch. XXI, secs. 48 *et seq.*)

With respect to referees, the earlier enactments, as well as the present statute (Ill. Rev. Stat. 1945, ch. 117 [Jones Ill. Stats. Ann. 107.305 *et seq.*]), prescribe the procedure to be followed in common law causes referred to them, provide that witnesses may be required to attend and testify before such referees in the same manner as is or may be provided by law in cases before masters in chancery, provide for their expenses and compensation, and empower them to administer oaths to witnesses who shall appear before them.

■ Chapter 101, Ill. Rev. Stat. 1945, provides (sec. 1, par. 1 [Jones Ill. Stats. Ann. 107.299]) "That all courts now established, or that may hereafter be established, and each judge, justice, master in chancery, and clerk thereof, and all justices of the peace, police magistrates and notaries public, shall have power to administer oaths and affirmations to witnesses and others, concerning anything commenced or to be commenced, or depending before them respectively." So far as we have been able to ascertain, none of our statutes empower special commissioners to administer oaths to witnesses, nor are they required to take oath, give bond, report to the court annually as masters in chancery are required to do, nor is any procedure indicated tending to define their responsibilities as assistants or officers of the court.

■ This being a question of first impression, no applicable decisions are cited by either counsel. Nichols in his Commentaries on the Illinois Civil Practice Act, vol. 3, sec. 2930, p. 296, states that "While the statute reads 'master or referee,' it seems that the words 'or referee' are included merely to cover the authorization for a reference in any action at law in which matters of account are in controversy, and that the reference must be to a master in chancery." We are inclined to agree with this reasoning because all

provisions in the statute for referees pertain to actions at law, and section 61 (par. 185) specifically provides that "the court may in any chancery action, *or in any action at law in which matters of account are in controversy*, . . . . refer the cause to a master or referee to take testimony and report his conclusions thereon," (italics ours), thus indicating, as it seems to us, the differentiation between chancery matters which may be referred to masters, and actions of law where matters of account are in controversy which may be referred to referees.

■ Section 5 (par. 5), ch. 90, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 106.26], was evidently enacted to provide for contingencies where the regular master was disqualified for any of the reasons enumerated in the statute and not otherwise, and cannot be interpreted to mean that a special commissioner or an assistant to the court designated by any other term, may be substituted in lieu of a special master. Section 5 certainly has no application to the practice in the Circuit court of Cook county where the matter could have properly been referred to any one of twenty masters, with fixed terms of office and readily available to assist the chancellor. Under the plain provisions of sec. 61, if this proceeding was a proper one for reference to a master, the chancellor should have referred it to one of the twenty masters of the court and not to either a special master, referee or special commissioner.

The theory upon which this and other references to special commissioners are made is that the chancellor has inherent power to appoint or refer a cause to any qualified person, by whatever name he may be designated. In view of the ample provision made for the appointment of masters as assistants to the court and the availability of so many masters in Cook county to whom a reference could be made, this argument is untenable, and the practice of appointing special com-

missioners without any authority in the statute to do so, is indefensible.

These conclusions lead to a consideration of the effect of the reference upon the decree entered in the case at bar. We think it rendered the entire proceeding void. A similar situation arose in the early case (1883) of *State for use of Board of Education v. Brookover,* 22 W. Va. 214, where by consent of the parties a cause was referred to a special commissioner, the order providing that after due notice of the time and place, the commissioner should proceed to audit and state an account in the matters of difference between the parties. When the account was settled and a report thereof made by the commissioner, the statute under which the reference was made, had been repealed. Nevertheless, the report was approved by the trial court, but on appeal the judgment entered thereon was reversed and the proceeding annulled. In *Palethorp v. Palethorp,* 184 Pa. 585, 39 Atl. 489, the court appointed a master in chancery and directed that a certain equity cause should proceed before him to final judgment. About 10 months prior thereto the office of master in chancery had been discontinued by rule of court except in proceedings where decrees or interlocutory orders were to be executed or their execution supervised by an officer of the court. The master's report was ultimately confirmed and a decree entered in accordance therewith. In reversing the decree of the chancellor the Supreme court of Pennsylvania held that "the equity rules have been utterly disregarded, and that there has been no trial had in this case. We can not consider a decree made under such circumstances as an adjudication upon any question to which it relates. The appointment of the master was a simple nullity. The proceedings before him were coram non judice, and therefore a nullity. The decree resting on his report has absolutely nothing to support it, and it is therefore a nullity. There is no question be-

fore us except the question whether we can sanction or overlook the brushing away of the orders of this Court in this manner whenever it may suit the convenience or the whim of the parties to trample upon them. It may be said that the defendants are in no position to raise this question now because of their appearance before and recognition of the master as an officer of the court, and that, as this case has been heard on the testimony, the result ought not now to be disturbed. But it has not been heard before any one having the right to hear it. Moreover, if we are to give to the mistakes of parties, or to their intentional disregard of our orders, the force and efficacy of regularity and law, what will become of our rules of practice? They will be set aside at will, or without purpose, by mere inattention and carelessness. We have but one thing to do in this case, and that is by no means a pleasant one. We must treat this record as it actually is, as an incurable series of mistakes, and set aside all that has been done since the appointment of the master by him, or by the judge of the court below resting upon or in any manner relating to what the master has done.'' It should be noted that in the *Palethorp* case the parties had consented to the reference, had appeared before the master and participated in the hearing. In the recent case of *Mitchell v. Illinois Cent. R. Co.*, 384 Ill. 258, plaintiff tendered a petition for leave to file a bill of review subsequent to the entry of the decree by the circuit court, contending that the special master before whom the cause was heard had failed to subscribe to the statutory oath. It appears that plaintiff had contested the cause before the special master and failed to raise any question with respect to the master's oath until after rendition of an adverse decision by the chancellor. The court held that his ''active participation before the special master, without objection, constituted a waiver of the taking of the oath by the special master.'' The implication of that decision is that if plaintiff had raised the

point in apt time and refused to participate in the hearing, the court would have ordered a reversal. In the case at bar, however, plaintiff objected to the reference to a special commissioner, moved that the order of reference be vacated, refused to appear before the master or to testify at the hearing.

In view of the foregoing conclusions, we hold that for lack of any statutory authority to refer chancery matters to special commissioners, the decree from which this appeal is taken is void, and it is therefore reversed and the cause remanded with directions that the chancellor either hear and determine the controversy himself, or if he deems it a proper matter for a reference, refer it to one of the masters in chancery of the court.

*Decree reversed and cause remanded with directions.*

SCANLAN and SULLIVAN, JJ., concur.