Irving Berry Phillips, Appellee, v. Agnes Dunne O'Connell, Individually and Executrix and Trustee under last Will of Eva Fitch Dunne, Deceased et al., Appellants. J. Paul Dunne, Appellee.

Gen. No. 43,837.

Opinion filed May 20, 1947. Rehearing denied June 4, 1947. Released for publication June 9, 1947.

GEORGE A. BOSOMBURG, of Chicago, for appellants.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellee; FRANK C. BERNARD, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This was a suit to foreclose a trust deed wherein plaintiff also sought a personal deficiency decree against the signers of an extension agreement. Defendants Agnes Dunne O'Connell (sometimes known and referred to as Agnes D. O'Connell), individually and as Executrix and Trustee under the last will of Eva Fitch Dunne, deceased, and Edith Fitch Dunne (sometimes known and referred to as Edith E. Dunne or Edith Dunne), individually and as Trustee under the last will and testament of Faith Dunne Kirkley, deceased, have appealed from a deficiency decree entered May 27, 1946, against defendants "J. Paul Dunne, Edith Fitch Dunne (sometimes known and referred to as Edith F. Dunne) and Agnes D. O'Connell (sometimes known and referred to as Agnes Dunne O'Connell), individually and as trustee under the

will of Eva Fitch Dunne, deceased,'' in the amount of $10,705.40.

For a partial history of the proceedings in this cause we quote from the opinion of the First Division of this court in *Phillips v. O'Connell*, 326 Ill. App. 15, 16, 17, 18, 19, 20, 23, 24, 25:

''By this appeal plaintiff seeks the reversal òf an order denying a deficiency decree in a trust deed foreclosure proceeding against certain defendants, successors in interest to the mortgaged property, upon an agreement which the court held to be a contract of guaranty. Plaintiff claims that it is an extension agreement in which the defendants assumed and agreed to pay the mortgage indebtedness.

''The trust deed being foreclosed was executed January 14, 1927 by Frederick T. Hoyt and Bettie F. Hoyt, his wife, to secure the payment of their principal promissory notes aggregating $37,500; March 29, 1927 the Hoyts conveyed the mortgaged property to Eva Fitch Dunne, subject to the trust deed securing the indebtedness above mentioned, 'which indebtedness the grantee herein assumes and agrees to pay.' Eva Fitch Dunne died April 14, 1930, and by her last will the mortgaged premises were devised to her daughter Agnes D. O'Connell, defendant, as trustee for herself, J. Paul Dunne, Edith Dunne and Faith Dunne Kirkley, children of the testatrix. The balance of $28,500 of the principal indebtedness secured by the trust deed coming due and payable January 14, 1932, the four beneficiaries of the trust, individually, and Agnes Dunne O'Connell, as executrix and trustee under the will of Eva Fitch Dunne, deceased, under date of December 31, 1931 executed the agreement in controversy, hereinafter called the extension agreement. It recited the execution of the trust deed, the holding of the notes secured thereby by The Northern Trust Company, the payment of $9,000 on the principal of said notes, and (in typewriting) that

'WHEREAS, Agnes Dunne O'Connell individually and as executrix and trustee under the will of Eva Fitch Dunne, deceased, Edith E. Dunne, Mary Faith Kirkley, J. Paul Dunne have requested of The Northern Trust Company an extension of the above indebtedness and in consideration for said extension hereby guarantee payment of the same.' The operative part (mostly printed) provided that, in consideration of the mutual promises and agreements thereinafter made by and between the parties, The Northern Trust Company agrees to extend the payment of the balance due on said indebtedness for one year, namely, until January 14, 1933, and the said beneficiaries under the trust, and Agnes Dunne O'Connell, as executrix and· trustee, agree with The Northern Trust Company that they will pay to the legal owner of the notes the sum of $28,500 January 14, 1933, with interest at six per cent, and further, that the parties mutually agree that 'all of the provisions, stipulations, powers and covenants in the said principal note, and in the said Trust Deed contained, shall stand and remain unchanged and in full force and effect for and during said extended period . . . except as changed or modified in express terms by this agreement.'

"Default having been made in the payment of the mortgage indebtedness as provided in the agreement for an extension of the time of payment, suit was instituted against the signers of the extension agreement and The Northern Trust Company, trustee. Faith Dunne Kirkley having died before the complaint was filed, James M. Kirkley, Sr., her divorced husband, James M. Kirkley, Jr., her son, and Edith Dunne, as trustee under her last will and testament, were made defendants. The complaint consisted of two counts: Count 1, being the ordinary foreclosure complaint in equity asking for a deficiency decree against those personally liable therefor; and Count 2, setting up an action at law for the mortgage indebted-

ness. Defendants Agnes O'Connell and Edith Dunne, individually and in their representative capacities, filed answers denying execution of the extension agreement in its final form, and alleging alteration of the agreement by striking from the body of it the name of Josephine Dunne, wife of J. Paul Dunne, and the failure of Josephine Dunne to sign it.

"A decree of foreclosure was entered directing a sale of the mortgaged premises and reserving jurisdiction for the purpose of determining the personal liability, if any, of the defendants for a deficiency. A sale of the premises was had and a decree approving same was entered June 14, 1938, finding a deficiency of $14,170.24, together with interest at five per cent from June 1, 1938. Shortly thereafter an order was entered referring the cause to a master in chancery 'on the question of what persons, if any, are personally liable for the deficiency found in the former decree of this court,' and denying defendants' countermotion that the matter be transferred to the law side of the court for a trial by jury. The master to whom the cause had been referred having been elected to the office of judge, a special commissioner was appointed who filed his report February 11, 1943. Plaintiff then moved for a decree against J. Paul Dunne, who had been defaulted, Agnes O'Connell, individually and as executrix and trustee, and Edith Dunne, individually, for the deficiency, then computed to be $9,945. He did not ask for a deficiency decree against the defendants substituted for Faith Dunne Kirkley. Plaintiff's objections to the report were permitted to stand as exceptions, and on hearing before the chancellor he, disregarding the commissioner's report, held that the extension agreement was a contract of guaranty and not one in which the defendants, successors in interest to the mortgaged property, assumed and agreed to pay the indebtedness secured by the trust deed being foreclosed, and, by an order entered

July 16, 1943, as amended July 28, 1943 (hereafter. referred to as the 1943 orders), denied plaintiff's motion for a deficiency decree and, on defendants' motion, transferred the cause to the law side of the court for a trial by a jury of the issues under count 2 of the complaint. The special commissioner's report was stricken from the files and jurisdiction in chancery retained for the purpose of determining the fees of the special commissioner after determination and disposition of the issues under count 2 on the law side of the court. From these orders plaintiff appealed, and on defendants' motion we dismissed the appeal, holding that the orders were not final and appealable orders so long as the issues under count 2 were pending and undisposed of. (322 Ill. App. 164.) The mandate being filed, the court on June 30, 1944 ordered that 'count 2 of the complaint be dismissed without prejudice on plaintiff's motion and without prejudice to the defendants' right, if any, of a jury trial,' and gave leave to plaintiff to file instanter his petition to vacate the 1943 orders. By their answer to plaintiff's petition defendants Agnes O'Connell, individually and as trustee, and Edith Dunne, individually, alleged among other matters that plaintiff's claim for a deficiency was fully satisfied by settlement of his claim for deficiency against the estate of Frederick T. Hoyt, deceased, one of the makers of the original notes. On October 16, 1944 plaintiff's petition was denied. His appeal from that order and the 1943 orders are before us in cause 43319. Shortly thereafter, upon leave granted, plaintiff appealed from the order of June 30, 1944 dismissing count 2 of his complaint on his motion, and from the 1943 orders. This appeal is numbered 43328. The appeals have been consolidated. Defendants have filed a motion to dismiss the appeal numbered 43328, and this motion has been reserved to final hearing.

". . .

"In denying a deficiency to plaintiff in the foreclosure proceeding the court construed the contract extending the time of payment of the mortgage notes as one of guaranty. This construction was based entirely upon the terms of the contract, and the word 'guarantee' in the typewritten recital quoted above was held to control the principal undertaking of the defendants in the operative portion of the contract to pay the balance due on the notes. In consideration of this undertaking to pay, the legal owner of the notes extended the time of payment. There is no ambiguity or uncertainty in any of the provisions in the operative portion of the contract. In *Chicago Daily News v. Kohler*, 360 Ill. 351, where, as in the case before us, the recital was typed and the operative portions of the contract were printed, the court said (pp. 362, 363): 'The operative part of the agreement is clear and free from ambiguity. Mere recitals, whether they are found in a preamble or at the end of a contract, are distinguishable from obligations or promises. The contract itself is one of bargain and sale, and its clearly expressed stipulations cannot be controlled by but must prevail over the recitals. (*Williams v. Barkley*, 165 N. Y. 48; *Hansbarger v. Hansbarger*, 206 Mich. 281; *Irwin's Bank v. Fletcher Savings and Trust Co.*, 195 Ind. 669.)' To the same effect are *Dunlop v. Lamb*, 182 Ill. 319, 328; *Burgess v. Badger*, 124 Ill. 288, 293. The word 'guarantee,' if it were in the operative portion of the contract, would not necessarily determine the character of defendants' obligation. That is to be determined by the terms of the contract and the circumstances under which it was made. *Vermont Marble Co. v. Bayne*, 356 Ill. 127; *Pan-American Bank & Trust Co. v. National City Bank of New York*, 6 F. (2d) 762; *Everts v. Matteson*, 21 Cal. (2d) 437, 449. In the *Everts* case the court had under consideration an agreement for the extension of a mortgage indebtedness which the grantees

of the mortgaged premises had assumed and agreed to pay; that agreement provided that in consideration of the extension of the note the grantees 'hereby guarantee the payment of the aforesaid note,' and that 'this guaranty shall not be affected by any forbearance . . . . And I (we) hereby promise to pay' the amount remaining unpaid at the times and in the several amounts therein specified. The court held that the agreement could not be construed as a contract of guaranty; that by it the grantees were assuming the trust deed indebtedness and becoming primary debtors on the obligation. A like holding was reached in *Birkhofer v. Krumm,* 4 Cal. App. (2d) 43, 40 P. (2d) 553. The trial court erred in holding the extension agreement to be a contract of guaranty. By its terms the defendants assumed and agreed to pay the mortgage indebtedness. The court had jurisdiction in a foreclosure proceeding to enter a deficiency decree against persons assuming the mortgage indebtedness. *Albers v. Moe,* 306 Ill. App. 208; *Chicago Title & Trust Co. v. See-Moon & Co.,* 312 Ill. App. 527. It follows that the trial court erred in entering the 1943 orders and in refusing to vacate them. The report of the special commissioner has not been considered by the trial court. On the motion to vacate the 1943 orders defendants raised an additional defense to their alleged liability for a deficiency decree. That defense, if persisted in, should be set up by answer to the complaint upon leave granted by the trial court.

"The orders appealed from are reversed and the cause is remanded for further proceedings in accord with this opinion."

The case was then redocketed in the trial court and the report of the special commissioner and defendants' exceptions to the report were again set down for hearing. While the case was thus pending defendants filed an amended supplemental answer in which they alleged that they were discharged from

liability as the result of a settlement effected in 1940 between plaintiff and the estate of Frederick T. Hoyt and his surviving widow. The issue raised by the amended supplemental answer was tried before the chancellor, who after hearing the evidence found adversely to defendants. The chancellor, in deciding the said issue, delivered the following opinion:

"The first matter is that this was paid and the indebtedness canceled by the original makers of the note and the mortgage, through the filing of a claim in the Probate Court, the allowance of the claim, and the payment of it, and the voucher that is filed recites that in full, and predicated upon the record of the Probate Court alone, the defendants claim that this is a complete satisfaction and extinguishment of the debt.

"The exhibits in this case consist of the letters that were written to the parties in interest in the Hoyt Estate by Mr. Wescott and by The Northern Trust Company, shows that they had advised that the claim filed for the sum of thirteen thousand dollars be settled because in their minds there was a serious question as to the liability. That settlement is evidenced by a covenant not to sue. That covenant not to sue is one in regular form and shows that it is not a release but rather a settlement in accordance with the understanding of the parties.

"A covenant not to sue, it has been held by our Supreme Court, is not to extinguish an indebtedness so as to release others jointly liable or responsible.

"There is not any question in the Court's mind, from the reading of those documents, that the estate was willing to get out from under for a settlement of forty-seven hundred dollars and were willing to take a covenant not to sue. Mr. Wescott advised it, his letter shows it, and the mere fact that they had evidenced the settlement by allowing a claim in part in the Probate Court is not, in itself, sufficient to over-

come the documentary proof presented here in the settlement and the covenant not to sue.

"The voucher that was filed is a receipt . . . . It has not any more efficacy than any receipt would have, and the law is a receipt may always be explained, that it is not conclusive, and so, in and by itself, while it appears on the face of it that it is in full payment, it is clearly explained by the other documents in evidence, including the covenant not to sue. Now, that disposes of that phase of the hearing.

"And the claim of adjudication in the Probate Court and the satisfaction of the debt is without foundation and not legally tenable."

We are satisfied, after a careful consideration of the evidence heard by the chancellor, that the contention of defendants that the chancellor erred in holding that they were not discharged from liability as a result of the settlement in the Probate court is without merit. In this connection it must be noted that defendants were not parties to the Probate court proceedings and that the cause of action embraced in the claim filed in the Probate court against the Hoyt estate was separate and distinct from the cause of action in the case at bar. It is somewhat difficult to follow defendants' argument that the chancellor erred in admitting testimony to contradict the records of the Probate court regarding the adjudication, judgment, merger, payment and satisfaction in full of plaintiff's claim. As we understand the argument, they claim that the receipt signed by plaintiff "In full of claim filed for $13,192.08 and settled for $4,750.00" is a "plain, absolute, unconditional and unambiguous release of a joint debtor, which cannot be impeached, varied or altered by evidence *aliunde,* and being such. operates in law to discharge the co-obligor." The chancellor held that this receipt, like any other receipt, was subject to explanation. This ruling was correct. (See *Deloney v. Dependable Accident &*

Health Ins. Co., 263 Ill. App. 53, 55; Ditch, Admr. v. Vollhardt, 82 Ill. 134; Atherton v. Shelly, 217 Ill. App. 419, 421.) Nor did the chancellor err in admitting in evidence the covenant not to sue, which was an integral part of the whole transaction and admissible to show the entire agreement of the parties. (See Hagerman v. Schulte, 349 Ill. 11, 20.) The chancellor was justified in holding that the covenant not to sue tended to show that the entire transaction was a settlement in accordance with the understanding of the parties and was brought about because there was a serious question as to the liability of the estate. It must be noted that the deficiency decree for $10,705.40 entered in the present proceedings made due allowance for the $4,750 payment made by the Hoyt estate.

Defendants also contend that the finding of the special commissioner that the extension agreement was valid and binding against defendants was contrary to the manifest weight. of the evidence and that the chancellor erred in sustaining the said finding. Defendants sought to have the commissioner find that Josephine Dunne's name had been included in the extension agreement at their express request in order to afford them a right of contribution; that they signed the agreement at the Northern Trust Company bank before Paul signed it; that at the time they signed it they informed the "man at the bank," whom they were unable to identify, that they were signing on the express condition that they would not be bound unless the agreement were signed by Josephine and that the "man at the bank" said that he understood their position. They also sought to have the special commissioner find that the bank ruled out Josephine's name in the extension agreement without their knowledge or consent, and after they had signed the agreement; and they contend that the special commissioner should have found that the facts showed

a conditional delivery and that the ruling out of Josephine's name materially altered the instrument. To briefly summarize the findings of the special commissioner: He found that at the time the extension agreement was prepared by the bank Agnes Dunne O'Connell and Faith Dunne Kirkley were divorced; that Edith Dunne was a spinster and that Paul Dunne was married to Josephine; that the bank agreed to grant a one-year extension provided "all parties interested" should sign the agreement; that the bank prepared the extension agreement and included Josephine's name therein and sent the agreement in duplicate to Agnes O'Connell with a request that it be "executed by all parties interested"; that Agnes thereupon mailed the agreement to Paul with a request that he and his wife sign it; that Paul advised Agnes that his wife would not sign the agreement and that he would sign it only if indemnified; that after Paul had received an indemnity agreement from the other defendants he appeared at The Northern Trust Company and informed them that he was prepared to sign the agreement but that his wife had refused to do so; that the representative of The Northern Trust Company then agreed to waive the signature of Josephine and accordingly ruled her name out of the agreement; that Paul then signed the agreement; that he then telephoned Agnes and informed her of what had transpired and that she expressed her approval; that subsequently the agreement was executed by the present defendants. The chancellor, an able and experienced judge, sustained the findings of the special commissioner. We find circumstances in the record that strongly support the findings of the special commissioner. He found that the alleged conversation with the "man at the bank" and the statement that the name of Josephine S. Dunne had been stricken from the extension agreement without defendants' knowledge and consent was a mere afterthought. Where a master in chancery has

heard oral testimony and a chancellor has approved his findings of fact they will not be set aside unless clearly and manifestly against the weight of the evidence. (*Kuzlik v. Kwasny,* 383 Ill. 354, 360.) The special commissioner's report also contains the following: "The Special Commissioner concludes as a matter of law that even if said defendants had been able to sustain their contentions as to the execution of said extension agreement, the said defendants having failed to notify the said bank that said extension agreement was invalid (after they had knowledge of this fact and after having remained in possession of the said premises and collected the rents, issues, and profits thereto for a considerable period of time after January 14, 1932) ratified said agreement and are estopped to assert this defense against the plaintiff herein." There is strong evidence that supports this conclusion of the special commissioner. Agnes O'Connell testified that she learned from Paul in April or May, 1932, that Josephine had not signed the agreement and that after receiving this information she no longer expected Josephine to sign it. She paid the interest evidenced by two interest coupons maturing July 14, 1932, and January 14, 1933. The maturity of the loan under the extension agreement was January 14, 1933. From defendants' testimony it appears that the last word they received from the bank was that the extension was to be conditioned upon the signature of the agreement by "all of the heirs." On January 27, 1932, the bank wrote a letter to Agnes and inclosed therein a copy of extension agreement "entered into." After the extension expired the bank permitted defendants to remain in possession of the property and to collect substantial income therefrom in excess of the interest paid until February, 1936. On August 16, 1933, the bank wrote a letter to Mrs. O'Connell asking her to communicate with the Real Estate Loan Division "in further regard to the matter

of the above loan for $28,500, *which matured January 14, 1933.*" Throughout the four years of forbearance by the bank there were frequent communications between the bank and Mrs. O'Connell, and although it must have been apparent to defendants that the bank was relying on the extension agreement they remained silent and never mentioned to the bank that they regarded the agreement as not binding upon them. Plaintiff was obliged to advance over $7,000 for unpaid taxes, most of which accrued during the period of the bank's forbearance. Plaintiff's counsel is justified in arguing that "a substantial portion of the deficiency of $14,170.24 resulted from the plaintiff's advancement of the unpaid taxes which had accrued against the property while the defendants were milking it and lulling the bank into the belief that the extension agreement was valid."

Defendants also contend that plaintiff has not proven that he was the legal holder and owner of the principal notes secured by the trust deed foreclosed. The decree of foreclosure entered April 11, 1938, found that plaintiff was the legal owner of the notes. In the extension agreement defendants agreed with The Northern Trust Company that they would pay the mortgage indebtedness "to the legal owner of said notes." Since the notes were payable to bearer there was no necessity for plaintiff to allege or prove an assignment from the former owner. The mere fact that plaintiff was acting as a nominee for The Northern Trust Company did not prevent him from suing on the notes as the legal owner thereof. (See *Joslyn v. Joslyn,* 386 Ill. 387, 394, 395.)

Defendants also contend that the chancellor erred in denying their petition for a change of venue. On December 20, 1945, two matters came on for hearing before the chancellor. The first was defendants' motion to file their third amended supplemental answer. The second was the special commissioner's

report and defendants' exceptions thereto. The proposed answer contained allegations concerning (a) the Hoyt settlement (met by a reply), and (b) the finality of the order of July 28, 1943 (met by plaintiff's motion to strike). Plaintiff opposed defendants' motion to amend and in the course of the argument his counsel advised the court that plaintiff was not attempting to preclude defendants from interposing the defense contained in the third amended supplemental answer, but he was objecting to the expense and delay which would result from reopening the proofs and that he would be willing to stipulate to the facts and let the court decide the case. The following then occurred: "The Court [addressing Mr. Bosomburg, counsel for defendants]: Are you interested only in getting this record of the probate court in as additional evidence? Is that what you want? Mr. Bosomburg: There are a few other defenses that I have. One of the things I want is to call the appellate court's attention to the fact that Judge LaBuy struck out the words, 'for want of jurisdiction.' The Court: That is a matter of record, here. The court takes judicial notice of its own records. You do not have to reopen it for that purpose." The court then asked defendants' counsel whether he would be satisfied if he got in the record the stipulation, order, statement of claim and voucher in the Probate court, to which he replied, "I will be satisfied and let you then pass on it." The court then granted leave to defendants to file the supplemental answer and granted plaintiff leave to file a reply thereto and also a motion to strike, and the parties stipulated as to all of defendants' evidence. The court then stated, "I am saying that the court will consider that evidence before the special commissioner in addition to this evidence and that closes the record," to which defendants' counsel replied, "That's right, your Honor." The chancellor was then ready to decide the issues until his attention

was called to the fact that plaintiff had not yet been afforded an opportunity to offer in evidence the covenant not to sue. The chancellor then asked defendants' counsel to stipulate as to that document, but defendants' counsel refused. *The court then said, "I want to get this covenant in evidence because that is important since I have allowed by stipulation this other proof to go in."* Counsel for defendants was contending that the covenant was not competent evidence. The court then granted plaintiff a continuance in order to bring in his evidence, with this observation, "So far, we have got the record complete, except for your covenant not to sue." Defendants' counsel then stated, in referring to the defenses raised by the supplemental answer, "So far as this point is concerned, this additional evidence, I can argue it today." In the course of the argument, on December 20, 1945, defendants' counsel urged that the court was precluded from hearing the case by the order of July 28, 1943, to which the court replied, *"You are overruled on the question of jurisdiction of this court to review Judge LaBuy's order."* As heretofore stated, defendants did not file their petition for a change of venue until January 10, 1946. The petition was filed after the hearing had commenced and after the trial judge had made several rulings adverse to defendants. We hold that the application for a change of venue came too late. (See *Comrs. of Drainage Dist. v. Goembel*, 383 Ill. 323, 328.)

Defendants contend that the court erred in depriving them of a right to trial by jury. As the law count was dismissed on plaintiff's motion, it is plain that there is no merit in the instant contention.

In defendants' reply brief their indefatigable attorney contends, for the first time, that the decree in the instant case is void because there is no statutory authority to refer chancery matters to a special commissioner. This contention is based upon the case

of *Simpson v. Harrison,* 328 Ill. App. 425, recently decided by this Division of the court. That case is clearly distinguishable from the instant one upon the facts. There, immediately after the entry of the order of reference to a special commissioner, the plaintiff moved to vacate the order of reference on the specific ground that the reference to a special commissioner was improper. He refused to appear before the special commissioner and participate in any of the proceedings and he excepted to the report of the commissioner upon the same ground. In the instant case defendants at no time objected to the reference to the special commissioner upon the ground they now urge. The sole objection raised by them was that the case was improperly on the chancery side of the court and that they were entitled to have it transferred to the law side of the court for a jury trial. They had made a like objection when a previous order of reference to one of the regular masters in chancery of the court was entered. They participated actively in the hearings before the special commissioner, offered evidence before him, and made no objection to his competency. Indeed, it appears that the instant contention of defendants was not raised nor suggested upon the former appeal. (*Phillips v. O'Connell,* 326 Ill. App. 15, *supra.*) If defendants' contention that the reference to the special commissioner and his report were void proceedings is sound, they have the right to raise the point at any time. If, on the other hand, the order of reference and the special commissioner's report were not void proceedings but merely voidable proceedings, the instant contention of defendants is without merit. (*Mitchell v. I. C. R. R. Co.,* 384 Ill. 258, 269.) Many other cases to the same effect might be cited. As to the case of *Simpson v. Harrison, supra,* it is sufficient to say that we erred in holding that the appointment of the special commissioner in that case ''rendered the entire proceedings

void." The trial court had jurisdiction of the subject matter and the parties in that cause, and the reference to the special commissioner was not a void order. It was a voidable order, and the plaintiff in that case in apt time made proper objections to the proceedings.

As to the cross-appeal of plaintiff: Plaintiff contends that "the court erred in denying plaintiff's petition for allowance of additional attorneys' fees and expenses and in failing to grant a hearing upon said petition and to make an allowance for additional attorneys' fees and expenses as therein prayed." On April 11, *1938,* the decree of foreclosure was entered in this cause. The decree found that plaintiff had a valid lien on the real estate for $44,491.31 with interest. Included in this amount was $1,270 for plaintiff's solicitors' fees and costs for the master's fees. The decree provided for the sale of the property and that in case of a deficiency plaintiff should have a lien upon the rents, issues and profits, and that the receiver theretofore appointed should continue to remain in possession. The decree further provided: "That the court further reserves jurisdiction of this cause and the parties hereto for the purpose of determining whether the defendants, or any of them, are personally or otherwise liable for the amounts found due as aforesaid; and in such event, to enter a deficiency decree against the person or persons so found liable, and execution shall issue on such deficiency decree. If the proceeds of said sale shall not suffice to satisfy in full the amounts found due and costs as aforesaid, this cause may be re-referred to said master to determine said question of personal liability, and in such event said master, at the request of the plaintiff, shall take evidence as to such personal liability and report the same with his conclusions of law and fact to this court." On June 14, *1938,* a decree was entered approving the sale, the issuance of a master's certificate of sale and master's report of sale and distribution, and finding that after application of the

proceeds of the sale there is a deficiency in the amount due plaintiff of $14,170.24, together with interest; that plaintiff has a lien on the rents, issues and profits for said deficiency during the redemption period, the receiver to continue in possession, and the court retains jurisdiction of this cause and the rents, issues and profits for the purpose of satisfying therefrom said deficiency in addition to the other matters in respect of which the court by its former decree reserved jurisdiction. On May 27, *1946*, plaintiff presented the following petition to the trial court:

"2. When Count I was pending before the Master in Chancery under the original order of reference, testimony was offered in his behalf relating to the services of his attorneys in these proceedings. The Master found that the fair, reasonable and customary charge for the services rendered by said attorneys was the sum of $1,270.00, and this amount was included in the indebtedness of $44,491.31 allowed in the decree of foreclosure.

"3. It was impossible at the time the testimony was offered and at the time of the entry of the decree to anticipate the services which plaintiff's attorneys would be required to devote since the entry of the decree. It was impossible to anticipate the large amount of expenses plaintiff would incur.

"4. Since the entry of the decree the plaintiff has been compelled to make the following expenditures:

| | |
|---|---:|
| "Court reporter's charges | $373.37 |
| "Fees of Expert witnesses | 150.00 |
| "Photostating copies of exhibits | 6.30 |
| "Miscellaneous | 2.00 |
| "Total | $531.67 |

"5. The services rendered by plaintiff's attorneys since the approval of the foreclosure sale and the approximate number of hours spent were as follows:

| | |
|---|---:|
| "Services under first order of re-reference | 62 hrs. |
| "Services under second order of re-reference until entry of order of July 28, 1943 | 235 |

| | |
|---|---|
| "Services re proceedings on law side of court under Count II | 20 |
| "Services re first appeal | 175 |
| "Services in trial court after dismissal of first appeal | 33 |
| "Services re second appeal | 70 |
| "Services re defendants' suit for leave to appeal to Illinois Supreme Court | 20 |
| "Services in trial court after appellate court's reversal of July 28, 1943 order | 40 |
| "Total | 655 hrs. |

"6. Under the terms of the trust deed, plaintiff is entitled to allowance of and to recover from the defendants liable for the deficiency, said expenses in the amount of $531.67 and a fair, reasonable, usual and customary amount for the services rendered by plaintiff's attorneys.

"WHEREFORE, your petitioner prays that there be included in the deficiency decree to be entered herein in favor of the plaintiff and against said defendants (in addition to the amount found due in the special commissioner's report) the sum of $531.67 for the plaintiff's expenses herein and such amount as the court may find and decree to be the fair, reasonable, usual and customary amount of said services of plaintiff's attorneys."

In the deficiency decree entered by the chancellor, in passing upon this petition of plaintiff, appears the following:

"And this cause coming on to be heard upon the petition of the plaintiff herein for the allowance of additional attorneys' fees and other costs and expenses, and defendants' answer thereto,

"The Court Finds that the cause of action has been merged in the final decrees heretofore entered herein, wherein the amount of the indebtedness was adjudged and determined, and that it has no further jurisdiction to make any additional allowance to the plaintiff for costs and expenses.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that said petition be and it is hereby denied."

Upon the oral argument of this appeal the able and experienced counsel for plaintiff admitted that they could find no authority that directly supports their contention that the chancellor erred in denying the prayer of the petition. The law bearing upon the question is well settled. "In *Ogle v. Koerner,* 140 Ill. 170, the court said (p. 179): 'A mortgage, or, as in this case, a deed of trust in the nature of a mortgage, vests in the party secured a lien upon the mortgaged premises. By virtue of that lien the mortgagee is entitled to have the mortgaged property sold under a decree of foreclosure and the proceeds of the sale applied to the payment of the debt secured. This is the mode provided by law for the enforcement of the lien, and when the lien has been once enforced by the sale of the property, it has, as to such property, expended its force and accomplished its purpose and the property is no longer subject to it.' In *Davis v. Dale,* 150 Ill. 239, the law was again stated, as follows (p. 243): 'By virtue of the lien created, the mortgagee or *cestui que trust* had the right to have the security foreclosed and the property sold and the proceeds applied in payment of the secured debt. But when this has been done, and the lien enforced by a sale of the property and the proceeds applied, the mortgage or trust deed has expended its force and the property is no longer subject to its provisions. (*Ogle v. Koerner,* 140 Ill. 170; *Seligman v. Laubheimer,* 58 id. 124.) . . . The sale of premises under a decree of foreclosure, where the decree does not expressly save any right to resort to the land again, is an absolute discharge of the premises from the lien." (*Lightcap v. Bradley,* 186 Ill. 510, 525, 526.) The law laid down in the foregoing case has been always followed. See the late case of *Gaskin v. Smith,* 375 Ill. 59, 65. If plaintiff at the time the foreclosure decree was entered had a

right to resort to the land again for the payment of the claim he sets up in the instant petition, he certainly did not expressly save that right in the decree of foreclosure. The chancellor, in our judgment, was justified in denying plaintiff's petition.

The decree of the Circuit court of Cook county is affirmed *in toto.*

*Decree affirmed in toto.*

SULLIVAN, P. J., and FRIEND, J., concur.

ADDITIONAL OPINION UPON PETITION FOR REHEARING UPON CROSS-APPEAL OF PLAINTIFF.

The decree of foreclosure, which directed the sale of the mortgaged premises, reserved jurisdiction for the purpose of determining the personal liability, if any, of the defendants for a deficiency. That was the only reservation made in that decree. A sale pursuant to the decree was had, and a decree approving the sale was entered, finding a deficiency of $14,170.24 together with interest. The amount of the deficiency having been determined by that decree, from which no appeal was taken, the matter was referred to the master for hearing and to report upon the question of who was personally liable for the deficiency. The sale of the premises extinguished the trust deed and every right and remedy under it, except that which was reserved by the decree for future determination. The specific reservation in the original decree was to determine who was personally liable for the deficiency, and it was the only reservation save the provision that preserved the lien to satisfy the deficiency decree during the period of redemption. The deficiency decree determined and adjudicated finally the exact amount of the remaining unsatisfied indebtedness. There was no appeal from the deficiency decree, hence, the indebtedness cannot now be enlarged by imposing an additional allowance for attorneys' fees and expenses. If the attorneys' fees

and expenses now claimed were to be an additional indebtedness under the trust deed or decree of foreclosure, they should have been included in the decree or specifically reserved in the decree for future determination.

The cases of *Ogle v. Koerner,* 140 Ill. 170; *Davis v. Dale,* 150 Ill. 239; *Seligman v. Laubheimer,* 58 Ill. 124, and *Lightcap v. Bradley,* 186 Ill. 510, as well as *Gaskin v. Smith,* 375 Ill. 59, cited in the original opinion, were not cited merely to show that the petitioners here have no further lien, but also to show that the trust deed becomes merged in the decree of foreclosure, and the sale thereunder extinguishes the trust deed except in so far as the decree reserves jurisdiction to determine the amount of the deficiency resulting from the sale, and preserves the lien during the period of redemption to satisfy the same, and for the purpose of determining who would be liable for such deficiency.

There was no such general reservation of jurisdiction either in the original decree of foreclosure or in the deficiency decree entered after the sale which would preserve for further determination such a claim as is now made by petitioners. Attorneys' fees in a foreclosure proceeding are recognized as a valid claim and to be a part of the indebtedness secured by the trust deed. They are by the terms of the trust deed considered an additional indebtedness. Therefore, when the indebtedness is fixed by the original decree of foreclosure, this type of claim should then be determined and included in the decree or else specifically reserved for future determination, in the absence of which the deficiency decree, fixing the amount of the remaining indebtedness unsatisfied under the decree of foreclosure, becomes a finality.

Petition for rehearing upon cross-appeal of plaintiff is denied.

*Petition for rehearing denied.*

SULLIVAN, P. J., and FRIEND, J., concur.